IN re Rahman Adam Williams
















IN THE
TENTH COURT OF APPEALS
 

No. 10-03-329-CV
 
IN RE RAHMAN ADAM WILLIAMS

 

 Original Proceeding
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      Because Relator did not file a record of the hearing that led to the complained-of order, the
petition for writ of mandamus is denied.
                                                                   PER CURIAM

Before Chief Justice Gray,
      Justice Vance, and
      Judge Allen (Sitting by Assignment)



Writ denied
Opinion delivered and filed December 31, 2003
[CVOT]



le="font-size: 12pt">      On April 22, Evans appeared for trial and, when the State failed to appear, waived her request
for a jury trial. After hearing the evidence presented by Evans, the trial court found Evans to be
totally and permanently incapacitated and awarded her lump-sum compensation benefits of
$92,218.80. After Stroud received a copy of the final judgment on April 24, the State timely filed
a Motion to Set Aside Default Judgment and Motion for New Trial. Following a hearing, the
court denied the State's motions.
Motion for New Trial
      In point one, the State asserts that the trial court erred in denying its motion for new trial
because it was entitled to a new trial as a matter of law. The trial court's ruling on a motion for
new trial will not be disturbed on appeal unless the appellant shows an abuse of discretion. 
Grissom v. Watson, 704 S.W.2d 325, 326 (Tex. 1986). The appellant must demonstrate that the
trial court acted without reference to any guiding rule or principle. Craddock v. Sunshine Bus
Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939). In Craddock, the Texas Supreme Court
set out the following three-part test for determining when a default judgment should be set aside
and a new trial granted:
A default judgment should be set aside and a new trial ordered in any case in which [1]
the failure of the defendant to answer before judgment was not intentional, or the result
of conscious indifference on his part, but was due to a mistake or an accident; [2]
provided the motion for a new trial sets up a meritorious defense and [3] is filed at a time
when the granting thereof will occasion no delay or otherwise work an injury to the
plaintiff.

Id. The Craddock elements also apply to a post-answer default judgment. See Grissom, 704
S.W.2d at 326. When all three elements of the Craddock test are met, the trial court abuses its
discretion by not granting a new trial. Bank One, Texas, N.A. v. Moody, 35 Tex. Sup. Ct. J. 616,
619 (April 15, 1992).
      The first element of the Craddock test, as applied to post-answer default judgments, requires
the State to demonstrate that the failure to appear was not intentional or the result of conscious
indifference, but was due to a mistake or accident. See Grissom, 704 S.W.2d at 327. The State
does not argue that it was not given notice; indeed, the State gave written notice to Evans of the
April 22 trial setting. The affidavits submitted by the State, however, aver that Stroud had no
actual notice of the setting. Her lack of actual notice was the result of Sharp's failure to follow
proper office procedure in updating his trial calendar and the case file. The issue, therefore, is
whether Sharp's omission was the result of conscious indifference. 
 

      Sharp provided an affidavit stating:
I recorded the trial date in the Evans case on my calendar as May 28, 1991. I
informed Miss Stroud that the case was set for trial on May 28, 1991.
 
I was under the impression that I had written to Plaintiff's counsel and to the Court
confirming that the case was set for trial on May 28, 1991. After speaking with Miss
Stroud on April 24, 1991, I have been told that my letter to Plaintiff's counsel and to the
Court confirmed a trial date of April 22, 1991.
 
My failure to properly calendar the April 22, 1991 trial date was not intentional and
was not the result of conscious indifference. I honestly believed that the case had been
reset for May 28, 1991, which was the alternative trial setting.

Likewise, Stroud stated by affidavit:
I met with Mr. Sharp on April 15, 1991, and we discussed the Paulette Evans case. 
Mr. Sharp informed me that the case was set for trial on May 28, 1991. I looked at Mr.
Sharp's calendar, and saw that he had calendared the Evans trial for May 28, 1991. 
There was nothing recorded for April 22, 1991.
 
On April 16 or 17th, I reviewed the file in this case to familiarize myself with it. I
saw the letter dated January 7, 1991, attached to this Motion as Exhibit B. This letter
stated that the case was set for March 25, 1991, with an alternate setting of May 28,
1991. Since trial had not taken place on March 25, 1991 and since Mr. Sharp informed
me that trial was scheduled for May 28, 1991, I assumed that the case was actually set
on May 28, 1991.
 
I reviewed the entire file several times, and did not find the February 28, 1991 letter
from Mr. Sharp setting the case for April 22, 1991. Mr. Sharp apparently had not
included the letter in the file.
 
I was not aware of the April 22, 1991 trial setting until April 24, 1991. On that
date, I received the Final Judgment against Defendant in the mail. I immediately called
Mr. Sharp at his current place of employment. He stated that it was his belief that trial
had been set for May 28, 1991. He told me there should be a letter in the file from him
to Plaintiff's counsel confirming the trial date. I told him there was no such letter. He
told me to check with his former secretary, Ms. Connie Hughes. I checked with Ms.
Hughes and she showed me Mr. Sharp's reading files. The reading files contain all
correspondence and work product prepared for Mr. Sharp by Ms. Hughes. I reviewed
the reading files and found a February 28, 1991 letter from Mr. Sharp, attached to this
Motion as Exhibit F. This letter stated that trial was scheduled for April 22, 1991. This
was my first awareness that the case had, in fact, been set for trial on April 22, 1991. 
I did not intentionally fail to appear at the April 22 trial setting. I failed to appear
because of my mistaken belief that trial was set for May 28, 1991.

      When the movant's motion and affidavits set forth facts which, if true, would negate
intentional or consciously indifferent conduct and these facts are not controverted, the first element
of the Craddock test is satisfied. Strackbein v. Prewitt, 671 S.W.2d 37, 38 (Tex. 1984). We
agree that these uncontroverted affidavits set forth facts supporting the State's contention that its
failure to appear for trial was a mistake or accident and neither intentional nor the result of
conscious indifference. See id. Thus, the State satisfied the first element of the Craddock test. 
See Craddock, 133 S.W.2d at 126.
      The second element of the Craddock test requires that the State set up a meritorious defense
in the motion for new trial. See Craddock, 133 S.W.2d at 126. The State satisfied this element
by setting up a defense of "sole cause." The State asserted that the sole cause of Evans' injuries
was a non-work-related automobile collision. Furthermore, the State set up a defense of
inadequate offset in the trial award. Because the movant need not show total nonliability, but
merely that the movant would be liable for a lessor amount of damages than that awarded in the
default judgment, the inadequate-offset defense is also sufficient to satisfy the meritorious defense
requirement. See Gardner v. Jones, 570 S.W.2d 198, 201 (Tex. Civ. App.—Houston [1st Dist.]
1978, no writ). 
      The State also satisfied the third element of the Craddock test by filing the motion at a time
when the granting of a new trial would not cause undue delay or otherwise injure the plaintiff. 
See Craddock, 133 S.W.2d at 126. The State filed it's motion for new trial three working days
after it learned of the default judgment. In its motion, the State announced that it was ready to go
to trial immediately and offered to reimburse Evans for all reasonable expenses incurred in
obtaining the default judgment. Once the movant has tendered prima facie evidence that the
granting of a new trial will not cause undue delay or otherwise injure the plaintiff, the burden of
going forward with proof of such injury shifts to the plaintiff. Cliff v. Huggins, 724 S.W.2d 778,
779 (Tex. 1987). 
      In an attempt to show such injury, Evans presented evidence that her present financial
hardship would be prolonged by a further delay in receiving the compensation benefits awarded
in the default judgment. The purpose of the final element of the Craddock test, however, is to
protect a plaintiff against the sort of undue delay or injury that would disadvantage her in
presenting the merits of her case at a new trial, such as a loss of witnesses or other valuable
evidence. Angelo v. Champion Restaurant Equip. Co., 713 S.W.2d 96, 98 (Tex. 1986). As in
Jackson v. Mares, 802 S.W.2d 48, 52 (Tex. App.—Corpus Christi 1990, writ denied), Evans
failed to show an injury that would negate the State's showing of no undue delay or injury. 
Having found that the State proved all elements of the Craddock test, we sustain point of error
one.
Motion to Set Aside Default Judgment
      In point two, the State contends that the default judgment should be set aside because Evans
did not comply with the following statutory notice requirement:
Notice of intent to take a default judgment against the state, a state agency, or a party
in a civil case for which Chapter 104 authorizes representation by the attorney general
shall be mailed to the attorney general at the attorney general's office in Austin, Texas,
by United States Postal Service certified mail, return receipt requested, not later than the
10th day before the entry of the default judgment.

See Tex. Civ. Prac. & Rem. Code Ann. § 39.001 (Vernon Supp. 1992). Evans does not dispute
the fact that the default judgment was taken against a state agency and that she gave no notice to
the Attorney General's office prior to taking the default judgment.      Instead, Evans contends that
the statute is applicable only to pre-answer default judgment cases. The rule is well established
that the requisites for setting aside a default judgment apply to post-answer as well as pre-answer
default judgments. See Grissom, 704 S.W.2d at 326; Cliff, 724 S.W.2d at 779. However, there
are no cases interpreting section 39.001. 
      Section 39.001 speaks generally of "a default judgment," and in no way limits the notice
requirement to pre-answer default judgments. The Texas Supreme Court has held that we can
insert additional words into a statutory provision only when it is necessary to give effect to the
clear legislative intent. See Hunter v. Fort Worth Capital Corp., 620 S.W.2d 547, 552 (Tex.
1981). The clear legislative intent of the statute is to provide notice to the State prior to entering
a default judgment against it. This purpose is applicable regardless of whether the default
judgment is taken as a result of the State's failure to answer or its failure to appear at trial. 
      Evans asserts that this interpretation of the statute would require notice of intent to take a
default judgment in every case against the State at least ten days prior to every trial setting. 
Otherwise, she argues, the State would have no incentive to appear for trial because no default
judgment could be taken against it. Evans' interpretation misses an important point: the plaintiff
may still present it's case on the trial date, send the required notice to the Attorney General's
office, and then request the court to enter a default judgment after the ten-day-notice period has
expired. The State would then have the burden of satisfying the elements of the Craddock test. 
If the State requested a hearing and satisfied the Craddock test before the plaintiff obtained a
default judgment, the court would abuse its discretion by entering the default judgment. If the
State allowed the ten-day notice period to expire and a default judgment was granted, the State
would then be in the same position as any party who is required to file a motion for new trial and
satisfy the elements of the Craddock test. Section 39.001 is merely a notice requirement. Once
the notice is given and ten days have elapsed, the plaintiff may take a default judgment against the
State, as in any case in which the defendant defaults by failing to answer or appear.
      According to section 39.002, "Failure to give notice in a case in which notice is required by
Section 30.004(b) or Section 39.001 results in any default judgment in the case being set aside
without costs." Tex. Civ. Prac. & Rem. Code Ann. § 39.002 (Vernon Supp. 1992). Therefore,
we sustain point of error two and order that the default judgment be set aside without costs. 
      The judgment is reversed and the cause is remanded for a new trial.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and remanded
Opinion delivered and filed May 13, 1992
Publish

WITHDRAWN 7-22-92