**Opinion issued April 9, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00423-CV

———————————

**SOUTHWEST WARREN, INC. AND THOMAS EUGENE MCCAIN,**
**Appellants**

**V.**

**THERESA CRAWFORD, Appellee**

On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Case No. 72986

**O P I N I O N**

Appellee, Theresa Crawford, obtained a default judgment against appellants, Southwest Warren, Inc. and Thomas Eugene McCain, for injuries sustained from an automobile accident between Crawford and McCain. Forty-nine days after the judgment was entered, Southwest Warren and McCain filed a motion to extend the

post-judgment deadlines and a motion for new trial. The trial court granted the motions and then, after a motion to reconsider both motions, entered an order denying both motions. The trial court denied Southwest Warren and McCain's subsequent motion to reconsider. In four issues on appeal, Southwest Warren and McCain challenge the trial court's ultimate denial of their motions to extend the post-judgment deadlines and for new trial and challenge the sufficiency of the evidence supporting the default judgment.

We reverse and remand for a new trial.

## Background

Crawford and McCain were involved in a car wreck. The wreck occurred while McCain was performing work as an employee of Southwest Warren. Some time later, Crawford sued Southwest Warren and McCain for injuries sustained in the car wreck. While both were served, neither Southwest Warren nor McCain filed an answer in the suit. On October 14, 2013, Crawford obtained a default judgment against Southwest Warren and McCain. The clerk of the court sent notice of the default judgment to Southwest Warren and McCain at the addresses at which they had previously been served.

On November 19, 2013, Crawford's attorney sent a letter to Southwest Warren's insurance carrier, notifying the carrier of the default judgment. The insurance carrier notified Southwest Warren and McCain. On December 2, 2013

(49 days after the judgment had been signed), Southwest Warren and McCain filed a motion to extend the post-judgment deadlines and a motion for new trial. Following a hearing, the trial court granted both motions.

Afterwards, Crawford filed a motion to reconsider both of Southwest Warren and McCain's motions. She also filed a request for findings of fact and conclusions of law. The trial court requested proposed findings from all parties. Southwest Warren and McCain did not respond to Crawford's motion or to the trial court's request for proposed findings. Following a hearing on Crawford's motion, the trial court granted the motion to reconsider the motion to extend the post-judgment deadlines and the motion for new trial. In the order, the trial court "rescind[ed]" its grant of both motions.

Southwest Warren and McCain then filed a "post-answer" motion for new trial. The motion contained a revised affidavit from Southwest Warren's owner, Richard Matise, and an affidavit from McCain. In the motion, Southwest Warren and McCain claimed that their failure to answer was due to Matise's mistaken belief that Matise had forwarded the information of the lawsuit to Southwest Warren's insurance agent. They also claimed to have a meritorious defense in that they alleged that, at the time of the accident, McCain's car was parked on the side of the road and outside the lane of moving traffic. Finally, they asserted they were

3

willing to reimburse Crawford for her reasonable attorneys' fees, and that they were "ready to proceed forward with the prosecution of this case."

McCain asserted in his affidavit that, at the time of the accident, "I was parked on the shoulder of the road and completely out of the moving lane of traffic when plaintiff collided with the vehicle I was driving." He further asserted that, when he received notice of the lawsuit, he turned the documents over to Matise. Matise told McCain that Southwest Warren would handle having the answer filed for him and for the company. Matise further stated that he would contact the insurance agent so that the agent could handle the matter. When he did not hear anything more about the lawsuit, McCain presumed the matter had been properly resolved. He did not know otherwise until Crawford's attorney sent a copy of the judgment to Southwest Warren's insurance company.

Matise stated in his affidavit that McCain gave him a copy of the documents that McCain had received concerning the lawsuit. Matise acknowledged that it was his responsibility to turn over the documents that Southwest Warren and McCain had received about the lawsuit to Southwest Warren's insurance agent. Matise testified that he thought he had contacted the insurance agent and sent him the relevant documents when, in fact, Matise had not. Based on the mistaken belief that he had properly notified the insurance agent, Matise asserted that, when he did not hear anything more about the lawsuit, he presumed the matter had

4

already been properly resolved. He did not know otherwise until Crawford's attorney sent a copy of the judgment to Southwest Warren's insurance company.

Crawford filed a response to the motion. During the hearing on the motion, the trial court acknowledged it was considering the substance of Southwest Warren and McCain's motion. The court expressed some doubt that Southwest Warren and McCain had carried its burden under the law and asked for case law to support both sides' positions. In its order, the trial court explicitly stated that it "considered [the motion for new trial], the response, the pleadings, and arguments of counsel." Based upon these considerations, the trial court denied the motion.

## Motion to Extend Post-Judgment Deadlines

In their second issue, Southwest Warren and McCain argue that the trial court erred by rescinding its original grant of their motion to extend the post-trial deadlines. We do not need to resolve this because we hold that the order did not harm Southwest Warren and McCain.

Rule 306a of the Texas Rules of Civil Procedure requires a clerk of the court to immediately give notice to the parties to a suit when a judgment is signed. TEX. R. CIV. P. 306a(3). Typically, a trial court's plenary power over a suit—including the trial court's authority to substantively change the judgment—expires following 30 days after the judgment is signed, unless a plenary-power-extending motion is timely filed. *See* TEX. R. CIV. P. 329b. If a party does not receive the notice of a

signed judgment sent by the clerk of the court, however, the party may file a motion to reset the relevant deadlines for filing post-trial motions. TEX. R. CIV. P. 306a(4). The party seeking to reset the deadlines for filing post-trial motions must establish that it did not acquire (1) notice or (2) actual knowledge of the judgment within 20 days of—and not later than 90 days after—the signing of the judgment. *Id.* If the trial court grants the motion, the court's plenary power is reinstated and all relevant post-judgment time periods begin to run as though the date of the parties' notice were the date the judgment had been signed. *Id.*

Forty-nine days after the judgment had been signed, Southwest Warren and McCain filed their motion to extend the post-trial motion and motion for new trial. In their motion to extend the post-trial deadlines, Southwest Warren and McCain alleged that they did not know about the judgment until 37 days after the judgment had been signed. The trial court granted the motion to extend, designating "the new date for the judgment" as the date that Southwest Warren and McCain alleged in their motion that they obtained knowledge of the default judgment. The trial court simultaneously granted their motion for new trial.

Crawford filed a motion for the trial court to reconsider its granting both motions. More than six months after the original judgment had been signed, the trial court signed an order "rescinding both Orders . . . granting [Southwest Warren and McCain's] Motion to Extend Post-Judgment Deadlings and . . . Motion for

6

New trial." Southwest Warren and McCain filed another motion for new trial, which the trial court denied.

In *Baylor Medical*, the Supreme Court of Texas considered whether a trial court can reconsider a grant of a motion for new trial. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 229–232 (Tex. 2008). In its analysis, the court held that a trial court can reconsider a grant of a motion for new trial. *Id.* at 231 (holding trial court has power to set aside new trial order). The reasoning employed by the court to reach this conclusion, however, compels us to conclude that, even if a trial court has the authority to reconsider a grant of a motion to extend the post-judgment deadlines, such a reconsideration does not have the legal effect of setting the post-judgment deadlines back to their original deadlines.

In *Baylor Medical*, the trial court rendered a take-nothing judgment based on the jury's verdict. *Id.* at 228. Later, the trial court granted a motion for new trial. *Id.* After the trial court judge was succeeded, the new trial court judge reinstated the judgment on the jury verdict. *Id.* Another motion to reconsider was filed, and the trial court once again granted the motion for new trial. *Id.* at 228–29. At the time, the law in Texas provided that a new trial could not be "ungranted." *Id.* at 229. The Supreme Court of Texas determined that this ruling was based on language in a rule of civil procedure that had since been modified. *Id.* at 230.

The court reasoned that the continuance of this ruling despite the change in the language of the rules of civil procedure could have been "to prevent a situation where reinstatement of a previous judgment would prevent a party from having time to file an appeal." *Id.* at 231. The court recognized that, if an order reversing the grant of a motion for new trial were considered to reinstate the original judgment—effectively rendering the grant of the new trial a nullity—then this procedural effect would deprive the party filing the motion the ability to appeal either order or any other preserved complaints. *See id.*

The court held this was not a concern, however, because the court had previously "clarified that 'a trial judge who modifies a judgment and then withdraws the modification has modified the judgment twice rather than never.'" *Id.* (quoting *Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 391 (Tex. 2008)). Accordingly, the order reinstating the original judgment does not void or otherwise render the grant of a new trial a nullity. *See id.* It, in effect, creates a new judgment that is identical to the original judgment in all ways except for the date of signing. *See id.*; *Gathe v. Gathe*, 376 S.W.3d 308, 315 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding "ungranting" new trial does not reinstate original judgment but requires trial court to enter new judgment). Accordingly, the appellate deadlines started to run from the order

reinstating the original judgment, not from the date of the original judgment. *See Baylor Med.*, 280 S.W.3d at 231.

Here, the trial court granted the motion to extend the post-judgment deadlines. This had the effect of establishing the new date of the judgment—for post-judgment deadline purposes—as the date that Southwest Warren and McCain learned of the default judgment. TEX. R. CIV. P. 306a(4). Applying the logic of *Baylor Medical*, the order "rescinding" the grant of the motion to extend did not void or otherwise render the extension order a nullity. *See Baylor Med.*, 280 S.W.3d at 231. Because the extension order still had effect, the post-judgment deadlines continued to run from the date set by that order. *See id.* To the degree that the order rescinding the grant of the extension has any legal effect, that effect cannot be to set the post-judgment deadlines at an earlier time. *See id.*

The prejudicial effect of a contrary ruling can be established by the facts of this case. Southwest Warren and McCain filed their motion to extend the post-judgment deadlines 49 days after the judgment, a time within the period allowed to file a restricted appeal. *See* TEX. R. APP. P. 26.1(c) (setting deadline to file restricted appeal for within six months of trial court's judgment). The trial court granted the motion a little more than three months after the original judgment had been signed. The order "rescinding" the extension, however, was issued more than six months after the original judgment had been signed, that is, after the time to file

9

a restricted appeal had passed. *See id.* To give the rescission order the legal effect of nullifying the extension of the post-judgment deadlines would deprive Southwest Warren and McCain of their right to file a restricted appeal.[1]

We hold that the order "rescinding" the extension of the post-judgment deadlines did not negatively affect Southwest Warren and McCain's post-judgment deadlines.[2] Additionally, when the trial court granted the motion to extend the post-judgment deadlines, it also granted Southwest Warren and McCain's motion for new trial. It subsequently signed an order rescinding the grant of the motion for new trial. This order had the effect of creating a new judgment. *See Baylor Med.*, 280 S.W.3d at 231; *Gathe*, 376 S.W.3d at 315. Accordingly, post-judgment deadlines were once again reset to run from the date of this last judgment. *See*

---

[1] Southwest Warren and McCain could still file a bill of review. *See* TEX. R. CIV. P. 329b(f); TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 2015); *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012). Given that the burden for a bill of review is more onerous than for a restricted appeal, however, we must conclude that Southwest Warren and McCain would be harmed by being deprived of review by restricted appeal. *Compare Pike-Grant v. Grant*, 447 S.W.3d 884, 886 (Tex. 2014) (requiring party seeking restricted appeal to establish it did not participate in trial proceedings) *with Mabon Ltd. v. Afri-Carib Enterprises, Inc.*, 369 S.W.3d 809, 812 (Tex. 2012) (requiring party seeking bill of review to establish failure to participate in trial proceedings was unmixed with any fault or negligence of that party).

[2] On appeal, Crawford argues the trial court properly granted her motion to reconsider, which contained additional evidence from her response to the motion to extend post-judgment deadlines. She does not argue on appeal, however, that the trial court erred by granting the original motion. We do not need to determine, then, whether the grant of a motion to extend the post-judgment deadlines is reviewable under the procedural posture of this case or, if so, whether error exists.

*Baylor Med.*, 280 S.W.3d at 231. There is no indication, then, that Southwest Warren and McCain were harmed by the order rescinding the extension order. Accordingly, we overrule Southwest Warren and McCain's second issue.

**Motion for New Trial**

In their first issue, Southwest Warren and McCain argue that the trial court abused its discretion by denying their request for new trial.

## A.    Standard of Review

Denial of a motion for new trial is reviewed for abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Sozanski v. Plesh*, 394 S.W.3d 601, 604 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or fails to correctly analyze or apply the law. *Celestine v. Dep't of Family & Protective Servs.*, 321 S.W.3d 222, 235 (Tex. 2010).

## B.    Analysis

In *Craddock*, the Texas Supreme Court set forth three requirements that a defendant must satisfy to set aside a default judgment and obtain a new trial: (1) the failure to file an answer or appear at a hearing was not intentional or the result of conscious indifference, but was a mistake or accident; (2) a meritorious defense; and (3) a new trial will not result in delay or prejudice to the plaintiff. *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

As an initial matter, there is some question as to which motion and accompanying evidence we are considering in reviewing the trial court's ruling on whether Southwest Warren and McCain satisfied the *Craddock* elements. In all, three motions addressed whether Southwest Warren and McCain satisfied their burden under *Craddock*. After the trial court granted Crawford's motion to reconsider, Southwest Warren and McCain filed their final motion for new trial. The evidence they presented with this motion was more detailed than what they presented with the first motion. There is at least some question as to whether the trial court was obligated to entertain for a third time whether Southwest Warren and McCain satisfied the *Craddock* elements.

We do not need to resolve this question, however. Even assuming the trial court was not obligated to consider the substance of Southwest Warren and McCain's third opportunity to show it satisfied the *Craddock* elements, the record shows that the trial court *did* consider the substantive arguments. At the hearing, the trial court asked questions about the parties' substantive proof and requested submissions of case law on whether Southwest Warren and McCain had satisfied the first element. Additionally, in its order denying the final motion for new trial, the trial court explicitly stated that it "considered [the motion for new trial], the response, the pleadings, and arguments of counsel." *See Stephens v. Dolcefino*, 126 S.W.3d 120, 133 (Tex. App.—Houston [1st Dist.] 2003), *pet. denied*, 181

S.W.3d 741 (Tex. 2005) (holding trial court can consider late-filed evidence, but record must affirmatively show evidence considered by trial court); *Fed. Home Loan Mortg. Corp. v. Pham*, 449 S.W.3d 230, 236–37 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding when record shows trial court considered motion and attached evidence, appellate courts can consider them as well on review).  Because the trial court undertook this substantive determination, it is part of our review on appeal.

The first *Craddock* element is the failure to file an answer or appear at a hearing was not intentional or the result of conscious indifference, but was a mistake or accident.  133 S.W.2d at 126.  "Where factual allegations in a movant's affidavits are uncontroverted, it is sufficient that the motion for new trial and accompanying affidavits set forth facts which, if true, would satisfy the *Craddock* test."  *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex. 1992).  While Crawford challenges whether the evidence presented in Southwest Warren and McCain's final motion for new trial satisfy the first Crawford element, nothing in her evidence *controverts* Southwest Warren and McCain's evidence.  Accordingly, if the evidence is sufficient to establish the first element, we must take it as true. *See id.*

McCain asserted in his affidavit that, when he received notice of the lawsuit, he turned the documents over to Matise.  Matise told McCain that Southwest

Warren would handle having the answer filed for him and for the company. Matise further stated that he would contact the insurance agent so the agent could handle the matter. When he did not hear anything more about the lawsuit, he presumed the matter had been properly resolved. He did not know otherwise until Crawford's attorney sent a copy of the judgment to Southwest Warren's insurance company.

Matise asserted in his affidavit that McCain gave him a copy of the documents that McCain had received concerning the lawsuit. Matise acknowledged that it was his responsibility to turn the documents that Southwest Warren and McCain had received about the lawsuit over to Southwest Warren's insurance agent. Matise testified that he thought he had contacted the insurance agent and sent him the relevant documents when, in fact, Matise had not. Based on the mistaken belief that he had properly notified the insurance agent, Matise asserted that, when he did not hear anything more about the lawsuit, he presumed the matter had already been properly resolved. He did not know otherwise until Crawford's attorney sent a copy of the judgment to Southwest Warren's insurance company.

The evidence in both of these affidavits establish that the failure to answer was not intentional or the result of conscious indifference. McCain followed company procedure. Matise thought he followed company procedure and notified

14

the insurance agent, but mistakenly failed to do so. We hold this is sufficient to satisfy the first element of *Craddock*. *See Republic Bankers Life Ins. Co. v. Dixon*, 469 S.W.2d 646, 647 (Tex. Civ. App.—Tyler 1971, no writ) (holding attorney forgetting to file answer is sufficient to satisfy *Craddock*); *see also Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994) (citing *Republic Bankers* as example of no conscious indifference).

Crawford argues that the evidence is conclusory because Matise did not testify about when he forgot to notify the insurance agent. Matise testified, however, that it was company policy to turn over documents about a lawsuit to the insurance agent "so that appropriate action can be taken to defend the lawsuit." This could only happen if Matise turned over the documents within the time to file the answer. By asserting that he thought he had done what was required of him under company policy, it follows that Matise thought he had done what was required of him in the time for the insurance company to hire an attorney to file an answer. There is no other evidence in the record suggesting that Matise intentionally waited until it was time to file a lawsuit and then accidentally forgot to send the documents to the insurance agent after the proper time to file an answer had expired.

Crawford also argues that *Holt Atherton* establishes that Matise's affidavit was insufficient to satisfy Craddock's first prong. In *Holt Atherton*, the court held

that, "[w]hen a defendant relies on his agent to file an answer, he must demonstrate that both he and his agent were free of conscious indifference." 835 S.W.2d at 83. That requirement has been satisfied here. McCain properly turned over the documents to Matise, and Matise asserted that he thought he had notified his insurance agent, but never actually did. There could not have been conscious indifference on the part of the insurance agent who was not actually informed of the suit until after judgment was entered.[3]

The second *Craddock* element is a meritorious defense. 133 S.W.2d at 126. Unlike the first element, this is not a matter that can be controverted by the opposing party. *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966). Instead, as long as the party asserts a defense that could prevent the plaintiff's recovery and presents prima facie evidence of that defense, the second *Craddock* element is satisfied. *Id.*

Here, Southwest Warren and McCain alleged in their final motion for new trial that the vehicle McCain had been driving at the time of the incident had been parked on the side of the road, outside the lane of moving traffic. Accordingly, by

---

[3] Crawford points out in her briefs that she served Southwest Warren's documents on an agent of service, suggesting there was no evidence about that agent's actions. There is no indication in the record, however, that Southwest Warren relied on that agent to file an answer. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). ("When a defendant *relies on his agent to file an answer*, he must demonstrate that both he and his agent were free of conscious indifference." (emphasis added)).

16

this defense, they claim that any fault in the accident must have been Crawford's. McCain asserted the same in his affidavit. Specifically, he asserted, "I was parked on the shoulder of the road and completely out of the moving lane of traffic when plaintiff collided with the vehicle I was driving." We hold this is sufficient to establish a meritorious defense.

The third *Craddock* element is a new trial will not result in delay or prejudice to the plaintiff. 133 S.W.2d at 126. "[O]nce the defendant has alleged that the granting of a new trial will not delay or otherwise injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff." *Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex. 1987). Such a burden is carried by the plaintiff by showing the loss of witnesses or other valuable evidence. *Evans*, 889 S.W.2d at 270.

Southwest Warren and McCain asserted that the grant of the new trial would not cause unreasonable delay, thereby shifting the burden to Crawford to disprove this assertion. *See Cliff*, 724 S.W.2d at 779. Crawford asserted in her response to the final motion for new trial and accompanying affidavit that (1) she had not been able to find out from Southwest Warren and McCain whether they knew of any witnesses from the accident, (2) it would be "difficult or impossible" for her to locate witnesses that long after the accident, (3) it would be "difficult or impossible" to examine the condition of her car, (4) her own memory of the of the

accident has diminished because the experience was traumatic and "she did not want to remember the frightening collision again," and (5) she would be burdened by the expense of further attorneys' fees.

For the first four assertions, even taking all of these assertions as true, however, Crawford has not carried her burden. Once the burden is on the plaintiff to show undue delay or prejudice, she carries this burden by showing the *loss* of witnesses or other valuable evidence. *Evans*, 889 S.W.2d at 270. None of the assertions presented by Crawford show an actual loss. Even if the trial court accepted as true that it would be impossible to locate witnesses or examine the condition of her car, to show an actual loss, Crawford first needed to establish that the evidence was previously available but then lost due to the delay caused by Southwest Warren and McCain's failure to answer. *See id.* That is, Crawford would need to show that she had evidence available to her at the time she filed suit but that the evidence has been lost in the time since she filed the motion for new trial. *See id.*; *see also Wiseman v. Levinthal*, 821 S.W.2d 439, 441 (Tex. App.— Houston [1st Dist.] 1991, no writ) ("Trial courts generally should rule in favor of giving a defendant his day in court when a motion for new trial is filed after a default judgment.").

For Crawford's assertion that the new trial would cause her financial hardship by having to pay even more attorneys' fees, Southwest Warren and

McCain have offered to reimburse Crawford for the attorneys' fees she incurred in obtaining the default judgment. We hold this is sufficient to rebut Crawford's claim of financial hardship. *See Cliff*, 724 S.W.2d at 779 (holding, though not precondition to obtaining new trial, offer to reimburse fees incurred in obtaining default judgment is important consideration for third element of *Craddock* test).

We hold that Southwest Warren and McCain satisfied their burden on this third element and that Crawford failed to carry her burden of establishing undue delay or prejudice. We sustain Southwest Warren and McCain's first issue.[4]

## Conclusion

We reverse the trial court's judgment and remand the case for a new trial and for a hearing on Crawford's reasonable attorneys' fees incurred in seeking the default judgment to be assessed against Southwest Warren and McCain.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

---

[4]     Because we sustain this issue, we do not need to reach Southwest Warren and McCain's remaining issues, which cannot provide them with greater relief. *See* TEX. R. APP. P. 47.1.